**ARROWHEAD INDUSTRIAL WATER, INC., Plaintiff–Appellant,**

v.

**ECOLOCHEM, INC., Defendant–Appellee.**

**No. 87–1626.**

United States Court of Appeals, Federal Circuit.

May 6, 1988.

George H. Gerstman of Pigott & Gerstman, Chicago, Ill., argued for plaintiff-appellant.

Richard L. Aitken of Lane & Aitken, Washington, D.C., argued for defendant-appellee. Of counsel was Clifton E. McCann, of Lane & Aitken, Washington, D.C.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and SKELTON, Senior Circuit Judge.

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the Northern District of Illinois, Eastern Division, No. 87–C–3839 (August 24, 1987), that dismissed a complaint of Arrowhead Industrial Water, Inc. (Arrowhead), seeking a declaratory judgment of invalidity, unenforceability, and noninfringement of U.S. Patent No. 4,556,492 ('492 patent) owned by Ecolochem, Inc. (Ecolochem). We reverse and remand.

## Background

Arrowhead and Ecolochem compete in providing water treatment services. On December 3, 1985, the '492 patent issued to Ecolochem for "Deoxygenation Process."

In early 1986, Ecolochem sued a third party, Memphis Mobile Water Technology, Inc., for infringement of the '492 patent in Arkansas (Arkansas suit).

On June 23, 1986, Arrowhead's customer, Virginia Power, issued a purchase order for deoxygenation services to Arrowhead.

On July 16, 1986, the president of Ecolochem sent Virginia Power a letter memorializing the visit of himself and three others with Virginia Power's senior buyer. That letter included:

Please be advised that Arrowhead Industrial Water is not licensed to use our process and we would therefore consider any use a direct patent infringement. Unfortunately, any such infringement could possibly involve Virginia Power as well so I believe it is valuable for you to have information on this patent in order to protect yourself and eliminate any potential conflict.

Fearing litigation if it pursued its agreement to purchase Arrowhead's services, Virginia Power demanded and got an indemnity agreement from Arrowhead.

On August 27, 1986, Ecolochem's lawyer sent Arrowhead a letter enclosing the '492 patent and saying Ecolochem "has reason to believe that Arrowhead is contemplating or has initiated the practice of the patented process" and demanding, within 20 days, a confirmation that any "unauthorized" practice, "if such practice exists" be "immediately" discontinued. The letter concluded with a statement that Ecolochem "has in the past not hesitated to protect its patent rights whenever appropriate."

On September 8, 1986, Arrowhead's attorney asked Ecolochem what that concluding statement referred to. On September 15, 1986, Ecolochem's attorney replied that the concluding sentence "refers to federal patent infringement litigation brought by our client in respect of its patents."

On September 26, 1986, Arrowhead started delivering its deoxygenation services to Virginia Power. Three days later, it sought a declaratory judgment that the '492 patent is invalid, unenforceable and not infringed. On April 20, 1987, the court dismissed that action for lack of actual controversy. The court's reasoning was:

These letters [between Ecolochem and Arrowhead] do not contain a threat of immediate litigation; they do not allege that Arrowhead's process infringed, is infringing, or will infringe its deoxygenation process [sic, patent]. All the "threats" are conditional upon Arrowhead using Ecolochem's deoxygenation process. * * *

The lawsuit pending between Ecolochem and a third party does not support a reasonable apprehension either. * * *

Finally, Arrowhead has not demonstrated convincingly that its deoxygenation process is the same as Ecolochem's. Arrowhead, as the party invoking this court's jurisdiction, has the burden of showing the process is the same as Ecolochem's patent process. *Super Products [Corp. v. D P Way Corp.]*, 546 F.2d [748,] 754 [192 USPQ 417, 421 (7th Cir. 1976)]. Arrowhead has not even alleged its process is identical to Ecolochem's process and it certainly has not shown the process is the same. In the absence of such evidence, the court cannot conclude an apprehension of a patent in-

fringement action is imminent.[1] Slip op. at 7–8.

The district court did not discuss the effect of Ecolochem's letter on Virginia Power. In dismissing the effect of the Arkansas suit as not indicating a belief by Ecolochem that Arrowhead's process infringed, the district court said, "It is undisputed, [sic] that Ecolochem has yet to make such a determination [of infringement by Arrowhead]." Slip op. at 8.

On April 24, 1987, Arrowhead filed a second declaratory action, repeating its complaint and citing an event not in the record of the first action. That event occurred in Ecolochem's Arkansas suit, when Ecolochem proposed this finding to the court:

> Two of the plaintiff's major competitors, the defendant and Arrowhead Industrial Water, Inc., have practiced, only since plaintiff's practice of the invention in suit at San Onofre, a process that infringes the patent in suit.

On May 11, 1987, Ecolochem wrote Arrowhead's customer, Omaha Public Power District, attaching a copy of the '492 patent and including statements similar to those in its letter to Virginia Power. Omaha Power demanded indemnification by Arrowhead.[2]

On August 24, 1987, the court granted Ecolochem's motion to dismiss for lack of actual controversy, citing its reasons for dismissing the first action and stating that Arrowhead's additional fact is not "sufficient to generate a reasonable apprehension of a patent infringement suit." The court held that Ecolochem's proposed finding could not contribute to a reasonable apprehension because it was communicated to the court rather than directly to Arrowhead. Saying "[b]y closely monitoring the Arkansas litigation, plaintiff [Arrowhead] has placed itself in apprehension of a patent infringement suit," the court concluded that it was Arrowhead's conduct in learning of Ecolochem's proposed finding that contributed to apprehension of suit, not Ecolochem's conduct in preparing and submitting its finding. The court said its first dismissal was not "based upon defendant's lack of belief that plaintiff's process was infringing," but "on the fact that defendant did not *communicate* such a belief to plaintiff" (emphasis in original).[3]

### Issue

Whether the district court erred in dismissing the action.

### OPINION

### I. INTRODUCTION

This appeal presents a type of the sad and saddening scenario that led to enactment of the Declaratory Judgment Act (Act), 28 U.S.C. § 2201. In the patent version of that scenario, a patent owner en-

---

1. By "conclude apprehension of a patent infringement action is imminent" the district court apparently meant "find that a reasonable basis exists for apprehending that a patent infringement action is imminent," the imminence of an apprehension being irrelevant.

2. Though the district court discussed the May 11, 1987 letter, we have disregarded it in our analysis. The presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed. *Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398, 222 USPQ 943, 949 (Fed. Cir.1984). Because dismissal is without prejudice, *see Indium Corp. v. Semi–Alloys, Inc.,* 781 F.2d 879, 883, 228 USPQ 845, 848 (Fed.Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 84, 93 L.Ed. 2d 37 (1986), Arrowhead could have, if it had proved necessary, filed a third complaint to bring Ecolochem's May 11, 1987 letter before the court.

3. Ecolochem's repeated statement in its briefs that the dismissal of the first complaint was not appealed from is a totally unsupportable effort to create by implication an aura of *res judicata.* The present appeal involves the totality of Ecolochem's conduct set forth in the complaint and is not, as Ecolochem would imply, limited to a question of whether its proposed finding in the Arkansas suit could alone have created a reasonable apprehension on the part of Arrowhead. Ecolochem cites only *Estevez v. Nabers,* 219 F.2d 321 (5th Cir.1955) for its assertion that Arrowhead is estopped from relying on anything in its first complaint. *Estevez,* however, involved an effort to retry certain facts absent from an immigrant's complaint seeking to avoid deportation. It did not, as here, involve a determination of whether uncontested facts require the legal conclusion that a case or controversy is present.

gages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. *See Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F.Supp. 219, 237, 150 USPQ 589, 601 (D.N.J.1966). Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. *See* E. Borchard, *Declaratory Judgments* 803–04 (2d ed. 1941). Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests. The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual "controversy" required by the Act. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Jervis B. Webb Co.*, 742 F.2d at 1398, 222 USPQ at 949.[4]

## II. ANALYSIS

### (a) Legal Principles

The foregoing facts of defendant's and plaintiff's conduct being undisputed, the question before us is one of law, and the clearly erroneous standard set forth in Fed. R.Civ.P. 52(a) is not involved.[5] A district

court's view of the legal effect of the fact pattern before it is not to be lightly disregarded. Nonetheless, when a misapplication of the relevant legal principles to that fact pattern is clearly present, the district court's dismissal of the complaint cannot stand.[6]

The competing considerations are of constitutional dimension: (1) there must be an actual controversy over which a federal court may exercise jurisdiction, *Aetna Life Insurance Co.*, 300 U.S. at 239–40, 57 S.Ct. at 463 (Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense"); (2) to proceed in the absence of a case or controversy would involve the court in rendering a forbidden advisory opinion. *Id.* at 240–41, 57 S.Ct. at 463–64. In broadly determining between (1) and (2), there is no specific, all-purpose test. As the Supreme Court noted in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941):

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

---

**4.** The Act serves the policies underlying the patent laws by enabling a test of the validity and infringement of patents that are possibly being used only as what Learned Hand, in *Bresnick v. United States Vitamin Corp.*, 139 F.2d 239, 242, 59 USPQ 345, 348 (2nd Cir.1943), called "scarecrows."

**5.** The district court treated Ecolochem's Rule 12(b)(1) motion as one challenging the jurisdictional facts, not Arrowhead's failure to allege them. Ecolochem's challenge, however, was to the legal effect of the facts of its own and Arrowhead's conduct; it disputed none of the facts in the record, but merely argued a legal proposition, i.e., that those facts were insufficient to create an actual controversy.

**6.** There is no absolute right to a declaratory judgment. The Act says a court "may" grant one. Hence, when there is a clear controversy and thus jurisdiction, a district court's decision on whether to exercise that jurisdiction is discretionary. *E.g., Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952); *Hanes Corp. v. Millard*, 531 F.2d 585, 591, 189 USPQ 331, 334–35 (D.C.Cir.1976). In the present case, however, the district court's dismissal was based on a finding of no jurisdiction and not on an exercise of the discretion arising from the statutory "may".

■ A test often useful in evaluating complaints for declaratory judgments in patent cases has been variously stated, its most recent statement appearing in *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955, 3 USPQ2d 1310, 1311 (Fed.Cir.1987):

> First, the defendant's conduct must have created on the part of plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity. Second, the plaintiff must actually have either produced the device or have prepared to produce that device.

The test, however stated, is objective and is applied to the facts existing when the complaint is filed. *Indium Corp.*, 781 F.2d at 883, 228 USPQ at 848. Its first prong looks to defendant's conduct; its second to that of plaintiff.

■ Respecting defendant's conduct, it must be such as to indicate defendant's intent to enforce its patent. If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more. In light of the subtleties in lawyer language, however, the courts have not required an express infringement charge. *Goodyear*, 824 F.2d at 956, 3 USPQ2d at 1312. When the defendant's conduct, including its statements, falls short of an express charge, one must consider the "totality of the circumstances" in determining whether that conduct meets the first prong of the test. *Id.* at 955, 3 USPQ2d at 1311. If the circumstances warrant, a reasonable apprehension may be found in the absence of *any* communication from defendant to plaintiff. *Dewey & Almy Chem. Co. v. American Anode, Inc.*, 137 F.2d 68, 71, 58 USPQ 456, 459–60 (3d Cir.1943). If, on the other hand, defendant has done nothing but obtain a patent, there can be no basis for the required apprehension, a rule that protects quiescent patent owners against unwarranted litigation. *See* E. Borchard, *supra*, at 807.

■ Respecting plaintiff's conduct, it must be such as to establish that plaintiff has a true interest to be protected by the declaratory judgment. *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 879, 219 USPQ 197, 202 (Fed.Cir.1983); *accord Windsurfing Int'l v. AMF Inc.*, 828 F.2d 755, 758, 4 USPQ2d 1052, 1055 (Fed.Cir.1987). Plaintiff may not, for example, obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity. *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90, 137 USPQ 235, 236 (2d Cir.1963); *see Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949. Plaintiff must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity. *Indium Corp.*, 781 F.2d at 883, 228 USPQ at 848; *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949. The former admits of rather straightforward proofs; the latter can be more problematic. Whether a declaratory plaintiff's ability and definite intention to undertake a potentially infringing activity constitutes sufficient "preparation" is a question of degree to be resolved on a case-by-case basis. *See Maryland Casualty Co.*, 312 U.S. at 273, 61 S.Ct. at 512; *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949.

Most, if not all, "tests" employed in the art of judging arise in a particular factual milieu. Hence they must be read, applied, and perhaps modified in light of the facts of subsequent cases. Rightly respecting the realities of business life, for example, the court employed a test requiring an apprehension that plaintiff or its *"customers* face an infringement suit or *threat* of one" (emphasis added) in *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783, 203 USPQ 166, 168 (7th Cir.1979). It would obviously be unrealistic to limit the required apprehension to one of imminent suit against plaintiff when defendant is exhibiting an intent to delay that suit until after defendant's extra-judicial enforcement efforts have failed and a trial date more convenient for defendant has arrived. *See Goodyear*, 824 F.2d at 956, 3 USPQ2d at 1312

(that defendant has not presently authorized suit not dispositive of future intentions).

■ Under the facts in *C.R. Bard*, this court stated the test as "plaintiff has sufficient interest in the controversy and that there is a reasonable threat that the patentee or licensor will bring an infringement suit against the alleged infringer." 716 F.2d at 879, 219 USPQ at 202. Some statements of the test, doubtless influenced by the facts of the case, appear to have assumed activity by plaintiff and an accusation of infringement. *See Goodyear*, 824 F.2d at 955, 3 USPQ2d at 1311 ("allegedly infringing activity"); *Jervis B. Webb Co.*, 742 F.2d at 1399, 222 USPQ at 949 ("accused device"); *C.R. Bard*, 716 F.2d at 879, 219 USPQ at 202 ("alleged infringer"). Basically, the test requires two core elements: (1) acts of defendant indicating an intent to enforce its patent; and (2) acts of plaintiff that might subject it or its customers to suit for patent infringement.

### (b) The Present Case

In the present case, Arrowhead has satisfied both prongs of the test.

### 1. Defendant's Conduct

Ecolochem's relevant conduct, viewed as it must be *in toto*, is formed of numerous acts. Many were threatening. None was reassuring. The letter to Virginia Power, citing Arrowhead and only Arrowhead, and saying Arrowhead is not licensed, produced an apprehension of litigation serious enough to cause a demand for indemnification before Virginia Power would continue to buy from Arrowhead. The letter to Arrowhead stated Ecolochem's express intent to enforce its patent rights by litigation.[7] Ecolochem's Arkansas suit evidenced not only an intent but a willingness and capacity to employ litigation in pursuit of its patent rights. Ecolochem's submission to the federal court in that case of a proposal that that court find Arrowhead an infringer established Ecolochem's belief that Arrowhead's process is an infringement.[8]

It is difficult, if not impossible, to imagine how a prudent Arrowhead executive confronted with the totality of Ecolochem's conduct could resist the onset of a most reasonable apprehension that Arrowhead is next. Indeed, considering the realities of business life, such an executive could incur the wrath of stockholders if he or she either continued to offer Arrowhead's process without seeking a resolution of the obvious conflict of interests or supinely and unjustifiably abandoned the process.

■ The district court's requirement that Ecolochem's letters to Arrowhead specifically charge Arrowhead's process as an infringement is a misapplication of the law respecting a reasonable apprehension. A specific charge would have eliminated the need to consider "all the circumstances" and a requirement for communicating a specific charge to Arrowhead would free Ecolochem to employ forever its thinly veiled threat and its patent-enforcement-by-letter tactics attempted here, thereby defeating the very purpose of the Act. As above indicated, Ecolochem's statement of intent to enforce its patent rights, its Arkansas suit, and its proposal that the court in that suit find Arrowhead an infringer presented more than was needed to create a reasonable apprehension. That its letters skillfully skirted an express charge of infringement, and the district court's characterization of Ecolochem's threat as "condi-

---

7. Ecolochem's brief says it merely considered litigation a "reasonable alternative," leaving unanswered the question, "alternative to what?" The only alternative appearing in the record would be Virginia Power's transfer of its order from Arrowhead to Ecolochem and Arrowhead's capitulation to Ecolochem's "alternative" method of enforcing its patent.

8. Ecolochem tells us, irrelevantly, that its proposed finding was "nonpublic." Nowhere, however, does Ecolochem deny that its proposed finding expressed its true belief that Arrowhead's process is an infringement. We will not assume that Ecolochem was trying to mislead the Arkansas court, nor, in view of Fed.R.Civ.P. 11, will we assume that Ecolochem had not made a thorough investigation and adduced the evidence of Arrowhead's infringement on which it necessarily rested its proposed finding.

tional," are in this case meaningless. Under the law, a court may find a clear basis for a reasonable apprehension in all the circumstances, even when a patentee first learns of plaintiff's conduct upon receipt of the complaint. *Dewey & Almy Chem. Co.,* 137 F.2d at 71, 58 USPQ at 459–60.

Similarly, and though not a requirement in every case, Ecolochem's submission of its proposed finding to the Arkansas court was an act establishing without quibble that Ecolochem had reached a studied and considered determination that Arrowhead's process is an infringement. *See* Fed.R.Civ. P. 11. How Arrowhead learned of that act of defendant is irrelevant. It remains an act of defendant, and clearly contributes to the required apprehension.[9] As above indicated, an apprehension may arise from circumstances which include *no* communication by defendant to plaintiff. That a competitor is suing a third party and asking the court to find one's company a co-infringer can hardly contribute to euphoria. The law does not require enterprises to keep their heads in the sand while a patentee picks them off one by one and at its leisure.

### 2. Plaintiff's Conduct

The district court's requirement that Arrowhead establish that its process "is the same as Ecolochem's" and allege that "its process is identical to Ecolochem's" is equally a misapplication of the relevant legal principles to the facts. Though the court did not expressly require Arrowhead to establish or assert that its process "in-

fringed" the patent, its language includes euphemisms that achieve the same result. It is at best incongruous to require that one seeking a declaration of *noninfringement* prove its process or product is the "same as" or "identical" to the patented process or product.[10]

The district court misread *Super Products Corp. v. D.P. Way Corp.,* 546 F.2d 748, 192 USPQ 417 (7th Cir.1976). The court in that case found a reasonable apprehension and an actual controversy, though defendant had not charged infringement and plaintiff had not yet produced its intended product. Though the court referred to the "virtual identity" of the intended and patent-described products in that case, *id.,* 546 F.2d at 753, 192 USPQ at 421, it did not mention a claim and did not lay down as a rule of law that a declaratory plaintiff has a burden of showing in every case that its product or process is "the same" as that patented. It misinterprets precedent to convert a fact finding that with others supported a decision into a universal requirement for all future cases. In *Super Products,* for example, the court held that plaintiff's preparation for producing a product "similar to that described" in the patent and "potentially infringing" was sufficient to satisfy the plaintiff's conduct prong of the test for reasonable apprehension. *Id.* at 753, 192 USPQ at 421; *see International Medical Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.,* 787 F.2d 572, 575, 229 USPQ 278, 280 (Fed.Cir.1986) (enough to admit

---

**9.** Ecolochem's argument that proof of its belief that Arrowhead's process infringes could not contribute to a reasonable apprehension, because it tried, unsuccessfully, to conceal that belief from Arrowhead, insults the logic element in law. Ecolochem could not have been surprised to learn that Arrowhead was following the prudent business course of monitoring the Arkansas suit on the same patent Ecolochem was writing about to Arrowhead and Arrowhead's customer. Nothing in the law requires a competitor to blind itself to anything going on in its field of business. Nor does anything in the law immunize from suit a patentee who notifies of an alleged infringement, so long as it carefully refrains from directly notifying the alleged infringer.

**10.** Ecolochem's brief begins in defense of the court's language, but then abandons it in favor of its own formulation, i.e., that Arrowhead should have established that its process was "arguably" an infringement. To require declaratory judgment plaintiffs to allege or show that their products or processes *are* infringements, or *are* "the same", would limit the judgments they seek to declarations of invalidity or unenforceability. A plaintiff may (and should when the facts warrant) admit infringement, while seeking a liability-escaping declaration of invalidity or unenforceability. All that the second prong of the test requires, however, is a showing that plaintiff's conduct evidences a real interest in an activity that *may,* potentially, be enjoined.

process *"might* at trial be found an infringement") (emphasis in original).

Moreover, Arrowhead did establish unequivocally that its process was sufficiently similar to warrant apprehension of suit by Ecolochem. Arrowhead submitted an unchallenged affidavit of one Crabtree, describing Arrowhead's process as including the steps of adding hydrazine to water, passing the resulting liquid through activated carbon, and deionizing the liquid through ion exchange.[11] Claim 1 of the '492 patent reads:

> A deoxygenation process comprising a first step of adding hydrazine to a liquid containing dissolved oxygen, a second step of passing said liquid through a bed of activated carbon to catalyze a reaction between said dissolved oxygen and said hydrazine whereby an amount of dissolved carbon contaminants are added to said liquid, and a third step of passing said liquid through an ion exchange resin selected from the group consisting of mixed bed resin and cation resin to remove at least said dissolved contaminants.

Ecolochem's sole attack on the Crabtree affidavit is that it fails to establish that "Arrowhead is practicing the process of the patent." That attack is not only immaterial, as above indicated, but is directly opposed to Ecolochem's admission, later in its brief, that a declaratory judgment plaintiff need only show use or preparation for use of a process that "might at trial be found to be an infringement." Indeed, a dismissal for lack of jurisdiction would not have been required if Arrowhead had stated in its complaint its belief that its process could not possibly be an infringement. *International Medical Prosthetics*, 787 F.2d at 575, 229 USPQ at 280.

Ecolochem's repeated assertions that Arrowhead did not disclose enough about its process comes with poor grace. Ecolochem knew enough about Arrowhead's process to tell Arrowhead it "had reason to believe" it was contemplating or using the patented process, and to tell the Arkansas court that (in Ecolochem's considered opinion) Arrowhead's process *is* an infringement.[12] Moreover, Ecolochem has nowhere specified that it does not interpret its patent as infringed by the three-step process set out in the Crabtree affidavit, either directly or under the doctrine of equivalents.

Lastly, in respect of plaintiff's conduct, we are not dealing here with a mere plan or wish of Arrowhead to practice its process. It is doing precisely that. The high cost of litigation makes the bringing of a declaratory judgment action a step not lightly undertaken, yet defendant's conduct has obviously created a most reasonable and compelled apprehension that continuing to sell its process could subject Arrowhead to liability for substantial damages.

## III. CONCLUSION

There is a real and concrete clash of important interests—a clear actual controversy—and the district court is fully possessed of jurisdiction under the Act to resolve it. The dismissal of Arrowhead's complaint must, therefore, be reversed and the case remanded for proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**

---

**11.** In the Arkansas suit, Ecolochem's complaint described the process it there accused of infringement as including each of the same three steps, adding only the functional language and description of the resin group found in the claim.

The district court made no reference to the Crabtree affidavit or to any claim, but described the entirety of Arrowhead's showing as "simply stating they have a deoxygenation process and Ecolochem does too."

**12.** In disposing of the present complaint, the district court indicated that it had not rested its earlier dismissal on Ecolochem's lack of determination, but on Ecolochem's failure to communicate it to Arrowhead. As indicated in the text and in the books, such direct communication is not required.