LOURIE, Circuit Judge,
dissenting.
I respectfully dissent and would reverse the district court’s decision. This is a close ease; where to draw to the line in deter *1299 mining when reasonable apprehension of suit exists is difficult. Surely, we should not condone permitting a patentee to be dragged into court when it has not engaged in threatening or aggressive acts because it is desirable that patentees inform potential infringers of their patent rights without fear of starting unjustified litigation. See Shell Oil Co. v. Amoco Corp., 970 F.2d 885 (Fed.Cir.1992).
On the other hand, we should not countenance parties pulling the wool over courts’ eyes. When they are acting threateningly, albeit in indirect ways, and then, when a threatened infringer brings a declaratory judgment action, they should not be permitted to throw up their hands and say, “Who me?”
The Declaratory Judgment Act was enacted to prevent patent owners from using “guerrilla-like” tactics and attempting “extrajudicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.” Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735, 6 USPQ2d 1685, 1688 (Fed.Cir.1988). I believe that is what happened here.
Whether the events that occurred were sufficient to create an actual controversy is a question of law which we review de novo. Arrowhead, 846 F.2d at 735, 6 USPQ2d at 1688. West had the burden of establishing by a preponderance of the evidence that it reasonably believed that First Data had an intent to initiate a patent infringement suit against West. “We must look for any express charges of infringement, and if none, then to the ‘totality of the circumstances.’ ” Shell Oil, at 888.
Here there was no express charge made to West, but the totality of the circumstances leads to a clear conclusion of reasonable apprehension. In its complaint, West recited that First Data had sued three other companies alleging infringement of the patents in issue, that those three companies render services similar to those of West, that a potential customer of West was advised by Mr. Katz that West infringed the First Data patents, and that First Data intended to enforce its patents. These factors, taken together, are sufficient to conclude that a case or controversy existed between West and First Data.
The majority disputes Mr. Katz’s authority to implicate First Data. However, Mr. Katz was no irrelevant small fry; he is the inventor of the patents-in-suit and an employee of Call Interactive, a licensee of the patents and a joint venture of a First Data subsidiary.[1] It is inconceivable to me that he was not acting with the knowledge and authority of the patentee. He was attempting to persuade Mr. Batkin of Semper Barris, a potential customer of West, to do business with Call Interactive. In Mr. Bat-kin’s October 22, 1990 affidavit, he stated:
During my conversation with [Mike Parks, Bill Miles, Ron Katz and others who were employed by Call Interactive], I was advised that Semper Barris infringed the Call Interactive and/or First Data Resources patents and was also told that other companies, including West, infringed the patents and that they fully intended to enforce the patents.
(Emphasis added). Predictably, this was communicated to West.
If Mr. Katz was not acting with the actual knowledge and authority of First Data, the latter should be held to have attributed knowledge and authority so that the patentee is held responsible under the Declaratory Judgment Act for what it either intended or was reasonably foreseeable. At first glance, the relationships may look tenuous, but on closer inspection, it is clear that the parties were all linked together. Affirmance by this court simply permits a patentee to play games with the courts.
Furthermore, no direct communication between West and First Data was required for a reasonable apprehension of suit to exist. Arrowhead, 846 F.2d at 736, 6 USPQ2d at 1689 (“If the circumstances *1300 warrant, a reasonable apprehension may be found in the absence of any communication from defendant to plaintiff’)- Also, contrary to the District Court’s opinion, comments made to West’s customer' cannot be characterized as hearsay for the purpose of determining that a reasonable apprehension of suit exists. West does not have to prove the truth of the matter asserted, but only what it reasonably believed. See Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 956, 3 USPQ2d 1310, 1312 (in an affidavit, a representative of the patentee “made innuendos that could reasonably have led Goodyear to believe that Releasomers would bring an infringement suit”).
Finally, the fact that the patentee also sued three other companies similarly situated supports a conclusion that West had a reasonable apprehension of suit. Infringement suits against third parties may be evidence of a reasonable apprehension. See Arrowhead, 846 F.2d at 733, 6 USPQ2d at 1686 (defendant sued third party for infringement); Shell Oil, at 888 (“[rjelated litigation may be evidence of a reasonable apprehension”). Such suits had been brought by First Data and West knew of them.
While not of record because it occurred after this suit was brought, it is a matter of no small interest that First Data did sue West after the district court dismissed West’s declaratory judgment action. The decision of the panel thus frustrates the purpose of the Declaratory Judgment Act by permitting a patentee to indirectly threaten a company, not be responsible for that action by responding to a lawsuit, and then choosing its own forum in a later suit. For the above reasons, I would reverse the decision of the district court.

. While not of record, or necessary to find reasonable apprehension of suit, Mr. Katz was also Vice Chairman of a sister company of the pat-entee.