851 F.Supp. 1260 (1994)
CENTURY INDUSTRIES, INC., Plaintiff,
v.
WENGER CORPORATION, Defendant.
No. NA 93-155-C.
United States District Court, S.D. Indiana, New Albany Division.
April 21, 1994.
*1261 Charles G. Lamb, James R. Higgins, Jr., Amy B. Berge and James C. Eaves, Jr., Middleton & Reutlinger, Louisville, KY, for plaintiff.
J. Anthony Goebel, Wyatt, Tarrant, Combs & Orbison, New Albany, IN, and James H. Patterson and Sri K. Sankaran, Patterson & Keough, P.A., Minneapolis, MN, for defendant.

ENTRY
BARKER, Chief Judge.
Defendant Wenger Corporation ("Wenger") moves to dismiss Century Industries, Inc.'s ("Century") Complaint for lack of subject matter jurisdiction. For the reasons stated below, we grant Wenger's motion to dismiss.

BACKGROUND
Century Industries, Inc. ("Century"), a Kentucky corporation, manufactures and sells independently developed mobile sound shell stages. Wenger Corporation ("Wenger"), a Minnesota corporation, owns U.S. Patent No. 5,078,442 (the "'442 Patent"), issued on January 7, 1992, for a portable performance platform and its reissue, patent no. Re 34,468, the ("reissue patent") issued on December 7, 1993. Robert Uhl is Century's president.
On May 24, 1993, James H. Patterson, an attorney for Wenger Corporation, wrote Mr. Uhl and stated the following:
The portable performance platform marketed by Century Industries, Inc., falls within the scope of at least some of the claims of the reissued patent application. We expect reissuance of the patent in a timely manner, and you should be aware *1262 that Wenger will fully enforce its patent rights under the reissued patent.
Please call me at your earliest convenience with any questions you may have regarding the enclosed materials or Wenger's position. It would be beneficial to all parties to avoid a potential patent dispute.
Century responded to Patterson's letter by contacting its outside patent counsel, who obtained a copy of the reissue application file in early June, 1993, and then prepared a formal infringement opinion concluding that Century's mobile sound shell stage did not infringe any of the allowed claims of Wenger's reissue patent. Century's patent counsel informed Wenger's counsel of its opinion of non-infringement in a September 3, 1993, letter.
On October 6, 1993, Wenger's counsel responded to Century's September 3, 1993, letter as follows:
We again advise you that the Century Industries (sic) stage comes within the scope of at least some of the allowed claims of the '188 application. Your letter of September 3 acknowledges that the Century stage has panels that are pivotally coupled together. We therefore fail to understand the conclusion that the literal language of the claim is not met. We also note that your letter does not address infringement under the doctrine of equivalents.
Please advise us immediately as to the steps Century Industries will be taking to avoid infringement of the '188 patent application claims once the patent reissues.
See James H. Patterson Affidavit, Exhibit G.
Around the same time in October, 1993, Mr. Uhl attended a trade show in San Jose, California and conversed with Wenger's delegation about the alleged infringement. Uhl claims that the Wenger delegation told him that there was nothing to discuss and that Wenger had the money budgeted to pursue a legal resolution. See Uhl Affidavit at ¶ 5.
From October to late November, 1993, the parties continued to discuss the infringement question in a series of correspondences and conference calls. Around mid-November, Century prepared and provided a video tape demonstrating how its stage functioned. On November 22, 1993, the parties memorialized a stipulation executed by both parties, stating:
Counsel for Wenger Corporation ("Wenger") and counsel for Century Industries ("Century") have been engaged in discussions aimed at resolving a potential dispute over certain patent infringement issues. Century has prepared a video tape, showing certain aspects of a Century stage, which it believes will aid an analysis of the issues under discussion. Century will provide a copy of this video tape to Wenger's counsel.... [which] will review the tape. Wenger's counsel will mail the video tape back to Century's counsel within two weeks after its receipt, without making any copies of it, and without showing it to anyone other than attorneys at Patterson & Keough. Century's counsel shall retain the tape without altering it until resolution of the issues under discussion.
On December 7, 1993, Century filed its Complaint seeking a declaration that its manufacture and sale of mobile sound shell stages does not infringe Wenger's '422 Patent and the reissue patent. Century claims that it filed the current action because Wenger provided no substantive responses to its non-infringement opinion of September 3 and because Wenger was allegedly stalling until the reissue patent would issue on December 7, 1993. Wenger now moves to dismiss based on lack of subject matter jurisdiction.

II. DISCUSSION

A. Standard for 12(b)(1) Dismissal
When a Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, "the allegations in the complaint are not controlling (citations omitted), and only uncontroverted factual allegations are accepted as true for purposes of the motion." Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573, 1583 (Fed.Cir.1993). When examining factual questions concerning jurisdiction under the Declaratory Judgment Act, the Court is "not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." Id. at 1584; see also International Harvester Co. v. John Deere & *1263 Co., 623 F.2d 1207, 1210 (7th Cir.1980); Infinitech, Inc. v. Vitrophage, Inc., 842 F.Supp. 332, 335 (N.D.Ill.1994).[1]

B. Jurisdictional Requirements under Declaratory Judgment Act
The Declaratory Judgment Act, 28 U.S.C. § 2201 provides:
In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
In Cardinal Chem. Co. v. Morton Intern., Inc., ___ U.S. ___, ___, 113 S.Ct. 1967, 1975, 124 L.Ed.2d 1 (1993), the Supreme Court noted that the Act's sole requirement for jurisdiction in patent litigation "is that the conflict be real and immediate, i.e., that there be a true, actual `controversy' required by the Act." When a defendant challenges the court's jurisdiction under the Act, the plaintiff has the burden of "supporting the allegations with competent proof, and demonstrating by a preponderance of the evidence the existence of an actual controversy." See Field Container Co., L.P. v. Somerville Packaging Corp., 842 F.Supp. 338, 340-41 (N.D.Ill.1994); International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980).
Recently, in BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir.1993), the Federal Circuit noted that for the declaratory judgment plaintiff to show that an actual controversy exists, he must demonstrate: "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."
We need only address the first prong of the BP Chemicals test because the parties do not dispute that Century has manufactured its mobile sound shell stage over two years and has given no indication of discontinuing its manufacturing and sale; therefore, it is engaged in present activity that could constitute infringement. The central issue in this case is whether Century has shown a "reasonable apprehension" that it will be sued for patent infringement by Wenger.

C. The Existence of Reasonable Apprehension
To determine "reasonable apprehension," the Court applies an objective test and focuses on whether defendant's conduct rose to a "level sufficient to indicate an intent to enforce its patent." Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed.Cir.1992). While an express charge of infringement is not required, the existence of any express charges of infringement is sufficient to demonstrate "reasonable apprehension." See BP Chemicals, 4 F.3d at 979. In Arrowhead Industrial Water Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed.Cir.1988), the Federal Circuit noted that "[w]hen the defendant's conduct, including its statements, falls short of an express charge, one must consider the `totality of the circumstances' in determining whether that conduct meets the first prong of the test."
In this case, because Wenger did not expressly claim that Century had infringed its patent, the Court must examine whether under the "totality of the circumstances," the interactions between Wenger and Century would give rise to a reasonable apprehension of suit. Because such inquiries usually involve close factual questions, a more detailed examination of the recent Federal Circuit cases is necessary.
The Federal Circuit first established the need to consider "all the circumstances" in determining whether a party could reasonably apprehend being sued in Arrowhead Industrial Water Inc. v. Ecolochem, Inc., 846 F.2d 731 (Fed.Cir.1988). In Arrowhead, defendant Ecolochem wrote several threatening letters to Arrowhead, including one that stated *1264 its "express intent to enforce its patent rights by litigation." 846 F.2d at 737. Moreover, Ecolochem was engaged in infringement litigation with a third party and proposed a finding to the court that stated:
Two of plaintiff's major competitors, the defendant and Arrowhead Industrial Water, Inc. have practiced, only since plaintiff's practice of the invention in suit at San Onofre, a process that infringes the patent in suit.
The district court dismissed Arrowhead's declaratory judgment action because Ecolochem never communicated directly to Arrowhead its allegation of infringement, but only communicated to the court. The Federal Circuit reversed and found that "Ecolochem's statement of intent to enforce its patent rights, its Arkansas suit, and its proposal that the court in that suit find Arrowhead an infringer presented more than was needed to create a reasonable apprehension." 846 F.2d at 737.
Most recently, in BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975 (Fed.Cir. 1993), the Federal Circuit affirmed the district court's dismissal of BP Chemicals' declaratory judgment action against Union Carbide for failure to present an actual controversy. In agreeing with the district court's conclusion that the declaratory action was brought as a marketing strategy and not in response to a threat by Union Carbide or reasonable apprehension of suit, the court cited the district court's observation that Union Carbide's representatives "repeatedly expressed their desire to resolve amicably any problems that might arise, in discussion with BP Chemicals as well as with potential licensees." 4 F.3d at 980. Moreover, the court pointed to the "undisputed fact of the absence of infringing activity." Id.
Finally, in Shell Oil Co. v. Amoco Corp., 970 F.2d 885 (Fed.Cir.1992), the Federal Circuit affirmed the district court's dismissal of Shell Oil's declaratory judgment action, because Amoco had taken no action against Shell, had made no assertive contact concerning the patent in controversy, and had issued no threats. Shell relied heavily on the fact that Amoco had responded affirmatively when questioned by a Shell representative regarding whether Amoco planned to enforce its patent. The Federal Circuit found that Amoco's affirmative answer did not provide the basis for Shell's reasonable apprehension that it would be sued. The Court reasoned that in negotiating its license with Shell, Amoco's answering yes to Shell's question was "reflexive and obligatory" because to answer no would have given Shell "free reign" to infringe Amoco's patent. See Shell Oil, 970 F.2d at 889.
In this case, Century cites the following as the basis for its reasonable apprehension of suit: 1) Wenger's letter of May 24, 1993 advising Century that "Wenger will fully enforce its patent rights under the reissued patent"; 2) Wenger's suggestion in its reply letter of October 6, 1993, that Century's non-infringement letter of September 3 did not address infringement under the doctrine of equivalents and Wenger's inquiring what steps Century would take to avoid infringement of the '188 patent application claims once the patent reissues. 3) Statements made by representatives from Wenger to Century's President Uhl that Wenger had set aside money to pursue a "legal resolution" of the infringement problem.
Having considered both parties arguments and authorities, the Court finds that although this is a close case, Century fails to demonstrate "reasonable apprehension" of a patent infringement suit as defined by the Federal Circuit case law. First, Century and Wenger were still engaged in discussions aimed at resolving the potential dispute as late as the end of November, 1993. The language of the November 19, 1993, Stipulation and Century's preparation of the video tape attest to the fact that the parties had not fully contemplated litigation as an immediate prospect. Second, with regard to the first letter written on May 24, 1993, the Court notes that Wenger also wrote that "[i]t would be beneficial to all parties to avoid a potential patent dispute." Third, with regard to Wenger's October 6 letter indicating disagreement with Century's non-infringement opinion and suggesting that infringement may lie under the doctrine of equivalents, the Court finds that subsequent correspondence and actions on the part of both parties suggest that these statements were mere posturing rather than explicit threats.
*1265 The alleged remarks made to President Uhl must be taken in context. There is no indication that the members of the Wenger delegation at the San Jose show spoke authoritatively on behalf of the company. Moreover, the subsequent negotiations with Century refute the notion that litigation was imminently contemplated in October, 1993. Had Century brought this lawsuit immediately after the alleged representation occurred, perhaps this Court would have placed greater emphasis on its import. However, in light of the fact that nothing transpired after the October conversation, this Court concludes that the facts presented in this case do not come close to the threatening actions of the defendant in Arrowhead. Indeed, the discussions that occurred throughout November places this case factually nearer to BP Chemicals, where Union Carbide repeatedly tried to achieve an amicable resolution.
Having compared the facts of the Federal Circuit cases with the facts in this case, the Court finds that the totality of the circumstances indicates that Wenger's overall conduct was not sufficiently threatening that Century could have reasonably apprehended Wenger's intent to initiate an infringement suit.

CONCLUSION
Because Century has not satisfied both requirements for an actual controversy, this Court lacks subject matter jurisdiction under the Declaratory Judgment Act. Accordingly, we grant Wenger's motion to dismiss.
It is so ORDERED.

JUDGMENT
In accord with its entry of this date, the Court dismisses this cause of action without prejudice for lack of subject matter jurisdiction and enters judgment in favor of defendant Wenger Corporation and against plaintiff Century Industries, Inc. Each party is to bear its respective costs.
It is so ORDERED.
NOTES
[1] The standard is different when the Rule 12(b)(1) motion is a mere facial challenge to jurisdiction. See Rueth v. U.S.E.P.A., 13 F.3d 227, 229 (7th Cir.1993) (citing Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir.1993)) ("When ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), `the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff.'").