**DUPONT DOW ELASTOMERS, L.L.C., Plaintiff,**

v.

**GREENE TWEED OF DELAWARE, INC., Defendant.**

**Civil Action No. 00–822–SLR.**

United States District Court, D. Delaware.

June 14, 2001.

Mary B. Graham, Rodger D. Smith, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, Marilyn H. Bromels, DuPont Dow Elastomers L.L.C., Wilmington, DE, for plaintiff.

Richard K. Herrmann, Mary B. Matterer, Blank Rome Comisky & McCauley, LLP, Wilmington, DE, Gary A. Rosen, Lynda L. Calderone, Martin G. Belisario, Christopher M. Mikson, Akin, Gump, Strauss, Hauer & Feld, LLP, Philadelphia, PA, for defendant.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

Pending before the court is a motion filed by defendant Greene Tweed of Delaware, Inc. ("Greene Tweed") to dismiss the case at bar for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiff DuPont Dow Elastomers, L.L.C. ("DuPont Dow") has sued Greene Tweed for a declaratory judgment that U.S.Patent No. 5,482,297 ("the '297 patent") is invalid and that a seal which DuPont Dow sells under the name Kalrez® TriLobe® does not infringe the '297 patent. The '297 patent claims a high-performance seal for semiconductor processing applications where the seal cross section is characterized by a certain geometric configuration. Greene Tweed asserts that there is no justiciable case or controversy between the parties relating to the '297 patent and, therefore, the case should be dismissed.

For the reasons that follow, the motion to dismiss shall be granted.

## II. BACKGROUND

In a letter dated August 12, 1999 directed to the President and C .E.O. of DuPont Dow, patent counsel for Greene Tweed forwarded a copy of the '297 patent and stated the following:

It has come to Greene Tweed's attention that DuPont Dow Elastomers L.L.C. ("Dupont Dow") is marketing, manufacturing and/or selling and offering for sale, directly and through its distributors, products under the name Kalrez® TriLobe®, as embodied in the enclosed brochure. By manufacturing, marketing and selling such products, DuPont Dow may be infringing the '297 Patent.

Please review the enclosed patent. If you do not believe DuPont Dow is infringing the claims of the '297 Patent, please provide us with sufficient information to make a reasonable determination of non-infringement. We would also appreciate it if you would make one of DuPont Dow's Kalrez® TriLobe® seals available to us, so that we can conduct our own evaluation.

This letter should in no way be construed as a charge of infringement against your company with respect to the '297 Patent. However, we do recommend that your company give careful consideration to the '297 Patent as it may pertain to Kalrez® TriLobe® products.

(D.I.7, Ex. B) On August 25, 1999, DuPont Dow acknowledged receipt of the August 12, 1999 letter. (D.I.7, Ex. C) By letter dated October 4, 1999, DuPont Dow denied that its TriLobe® seals infringed the claims of the '297 patent. (D.I.7, Ex. D) Greene Tweed did not respond to DuPont Dow's denial of infringement until March 6, 2000, when patent counsel examined claim 1 of the '297 patent as it related to a drawing of a DuPont Dow Kalrez® Tri-Lobe® seal. Counsel closed with the following remarks:

We are not charging Dupont Dow with infringement of the '297 patent at this time, but we need to understand the structure of the TriLobe® seal in order to properly evaluate the TriLobe® seal in light of the '297 patent. Your cursory response to my previous letter provides no indication of the structure of the Tri-Lobe® seal or why you believe that the TriLobe® seal does not infringe the claims of the '297 patent.

We would appreciate receiving your detailed comments concerning this matter. We look forward to reaching an amicable resolution to this matter.

As originally requested in my August 12th letter, we would also appreciate it if you would make one of DuPont Dow's Kalrez® TriLobe® seals available to us, so that we can conduct our own evaluation.

(D.I.7, Ex. E) By letter dated August 24, 2000, Greene Tweed reiterated its request for information from DuPont Dow. (D.I.7, Ex. F) DuPont Dow responded by letter dated August 31, 2000 as follows:

We have received your letter dated August 24, 2000. It requests a response by September 5.

The attorney handling this matter, Marilyn Bromels, is out of the office this week, returning on your response date of September 5. She will review this matter promptly upon her return. However, I expect she will require a few days to prepare a response.

(D.I.7, Ex. G) On September 11, 2000, counsel informed Greene Tweed that DuPont Dow "remain[ed] of the view that Kalrez TriLobe perfluoroelastomer parts do not infringe any of the claims of the '297 patent, either literally or under the doctrine of equivalents." (D.I.7, Ex.

H) The declaratory judgment action at bar also was filed by DuPont Dow on September 11, 2000.

Within months of sending its August 1999 letter to DuPont Dow about the '297 patent, Greene Tweed sent virtually the same letter to DuPont Dow about another of its patents, U.S.Patent No. 5,461,107 ("the '107 patent"), entitled "Perfluoroelastomeric Compositions and Seals Having Improved Chemical Resistance and Methods of Making Same." (D.I.9, Ex. A) DuPont Dow responded by letter dated November 10, 1999, asserting that DuPont employees had in fact first made the subject matter claimed in the '107 patent. (D.I.9, Ex. B) Greene Tweed requested more detailed information about DuPont Dow's allegation. (D.I.9, Ex. C) Dupont Dow provided such in a letter dated February 2, 2000. (D.I.9, Ex. D) By letter dated April 13, 2000, Greene Tweed requested yet more information, ending with the following language: "As with our previous letter, this letter should in no way be construed as a charge of infringement against your client with respect to the '107 patent, but simply a request that you promptly provide me with the information requested herein." (D.I.9, Ex. E) DuPont Dow wrote in a May 11, 2000 letter that "[a]t the present time, providing further details in response to the inquiries you have made is uncalled for.... At this juncture, the information requested should be available publicly or from" the named inventors of the '107 patent. (D.I.9, Ex. F) On June 14, 2000, Greene Tweed filed suit against DuPont Dow for infringement of the '107 patent.

## III. STANDARD OF REVIEW

A declaratory judgment action may be brought in order to resolve an "actual controversy" between "interested" parties. 28 U.S.C. § 2201. As explained by the Federal Circuit in *BP Chemicals Limited v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir.1993):

> The purpose of the [Declaratory Judgment] Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side. It accommodates the practical situation wherein the interests of one side to the dispute may be served by delay in taking legal action. However, the controversy must be actual, not hypothetical or of uncertain prospective occurrence. The requirement of actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory judicial rulings—all raised in this case.

*Id.* at 977. Recognizing that "[t]here is no simple rule that addresses all shades of relationships between disputants," the Federal Circuit has developed

> a pragmatic two-part test for determining declaratory justiciability. There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Id.* at 978. In the present case, only the first prong of this test is in dispute. The court, therefore, confines its analysis to whether Greene Tweed's conduct placed DuPont Dow in reasonable apprehension of an infringement suit.

Although there are countless permutations of competitive relations, the Federal Circuit has given some guidance as to what conduct constitutes commercial activity that does not meet the test for a declaratory judgment action. Certainly "more is

required than the existence of an adversely held patent." *Id.* Indeed, a "patentee's statement that it intend[s] to enforce [its] patent [has been] held not to create a reasonable apprehension of suit." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1054 (Fed.Cir. 1995), discussing *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 889 (Fed.Cir.1992). Likewise, "[t]he offer of a patent license does not create an actual controversy.... When there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." *Phillips Plastics Corp.,* 57 F.3d at 1053. As a general principle, then, the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met "when a patentee does nothing more than exercise its lawful commercial prerogatives and, in so doing, puts a competitor in the position of having to choose between abandoning a particular business venture or bringing matters to a head by engaging in arguably infringing activity." *Cygnus Therapeutics Systems v. ALZA Corp.,* 92 F.3d 1153, 1160 (Fed.Cir.1996).

On the other hand, the test for finding a "controversy" is a "pragmatic one and cannot turn on whether the parties used polite terms in dealing with one another." *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir.1996). "[I]n light of the subtleties in lawyer language," *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988), the Federal Circuit has not required express charges of infringement or similar "magic words" to create a justiciable controversy. *Id.* Thus, the fact that Greene Tweed never expressly charged DuPont Dow with infringement is not dispositive. Courts must look to the "realities of business life" so that a patentee may not succeed in extrajudicial patent enforcement by employing ambiguous "lawyerisms" and "scare-the-customer-and-run tactics." *Id.* at 735-36.

## IV. DISCUSSION

Not surprisingly, the question of whether the totality of circumstances presented by the record at bar meets the test for declaratory justiciability is a close one. DuPont Dow has demonstrated that Greene Tweed, despite its "polite terms," does sue for infringement based on an exchange of correspondence.[1] Greene Tweed, for its part, has demonstrated that it has not sued any party for infringement of the '297 patent and that, unlike so many of the cases cited, none of DuPont Dow's customers have been contacted in any way regarding the '297 patent.[2] In the absence of either an express threat to sue, a pattern of suing on the '297 patent, or conduct which has interfered with DuPont Dow's customer relations, the court concludes that DuPont Dow has not demonstrated a reasonable apprehension of suit.

## V. CONCLUSION

For the reasons stated, the court concludes that it does not have subject matter jurisdiction to entertain DuPont Dow's declaratory judgment action. Therefore, the

---

**1.** The litigation, of course, involved charges of infringement of the '107 patent, not the '297 patent. *See Consac Indus., Inc. v. Nutramax Labs., Inc.,* 1998 WL 229255 (E.D.N.Y.1998). Greene Tweed argues that the two patents are not related and that DuPont Dow did not deny infringement of the '107 patent in its correspondence.

**2.** *See, e.g., Arrowhead,* 846 F.2d at 737. *See also BOC Health Care, Inc. v. Nellcor Inc.,* C.A. No. 92–715–SLR, 1993 WL 498912 (D.Del. May 13, 1993); *Dow Chemical Co. v. Exxon Chemical Patents, Inc.,* C.A. No. 94–572–SLR, 1995 WL 562289 (D.Del. Aug.16, 1995); and *General Latex and Chemical Corp. v. BASF Corp.,* C.A. No. 99–38–SLR (D.Del. July 14, 1999) (D.I.9, Ex. G).

court shall grant Greene Tweed's motion to dismiss.

An appropriate order shall issue.